EDMUND G. BROWN JR. Attorney General DIANE E. EISENBERG Deputy Attorney General
THE HONORABLE WILLIAM D. GORE, SHERIFF OF THE COUNTY OF SAN DIEGO, has requested an opinion on the following question:
Is a peace officer who purchases and registers an assault weapon in order to use the weapon for law enforcement purposes permitted to continue to possess the assault weapon after retirement?
 CONCLUSION
A peace officer who purchases and registers an assault weapon in order to use the weapon for law enforcement purposes is not permitted to continue to possess the assault weapon after retirement. *Page 2 
 ANALYSIS
Introduction
The law of this state governing the sale and possession of assault weapons is contained in legislation commonly known as the Assault Weapons Control Act (Act).[1] The Act generally makes possession of assault weapons an offense, subject to certain exceptions. Pursuant to an exception contained in subdivision (f)(1) of section 12280, peace officers of designated agencies may possess and use the agency's assault weapons for law enforcement purposes. A second exception, contained in subdivision (f)(2) of section 12280, permits a peace officer employed by one of the designated agencies to buy an assault weapon if the employer authorizes the officer to possess the weapon and the officer registers the weapon within a specified time period. This second exception does not, on its face, limit the use of the weapon to law enforcement purposes.
We are called upon to determine whether the Act's exceptions permit the continued possession of an assault weapon by an individual who purchased and registered the weapon as an active duty peace officer, but who has since retired. In his request, the requester mentioned the case of Silveira v. Lockyer, [2] in which the Ninth Circuit Court of Appeals struck down a provision that was similar to what is now section 12280(f)(1), but that allowed a retired peace officer to possess an assault weapon that had been transferred to the officer by the agency from which the officer retired.[3] The Silveira court reasoned that, because retired peace officers no longer served in any law enforcement capacity, their possession of assault weapons did not advance a legitimate state interest.[4] The Legislature subsequently amended the Act to delete that exception.[5]
The question presented to us hypothesizes a situation that might arise from section subdivision (f)(2). Although this specific provision was not addressed in Silveira, we find the reasoning of Silveira to be highly relevant to our analysis. Indeed, our examination of the language of the Act, the legislative history of the Act, and the Silveira case all persuade us that a peace officer who has purchased and registered an assault *Page 3 
weapon as an active duty officer no longer comes within any of the Act's exceptions upon his or her retirement, regardless of whether the officer used the weapon for law enforcement purposes or for other purposes prior to retirement.
The Act
In the Act, the Legislature stated its intent with respect to assault weapons as follows:
 The Legislature hereby finds and declares that the proliferation and use of assault weapons poses a threat to the health, safety, and security of all citizens of this state. The Legislature has restricted the [specified] assault weapons . . . based upon finding that each firearm has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of assault weapons and to establish a registration and permit procedure for their lawful sale and possession. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational activities.[6]
The Act identifies and regulates a whole class of semiautomatic weapons, described by both make and model and by capacity and function.[7] Antique firearms are excluded from the Act's coverage, as are pistols designed for use in Olympic target shooting events.[8] It is a felony to manufacture or cause to be manufactured, distribute, *Page 4 
transport, import, keep for sale, offer or expose for sale, or give or lend any assault weapon or any .50 BMG rifle, [9] except as provided by the Act.[10]
The Act contains a number of exceptions. For example, the Act contains "grandfathering" provisions allowing a person who lawfully possessed an assault weapon prior to the enactment of the Act, or prior to the date the weapon was designated an assault weapon, to continue to possess the weapon provided he or she registers the weapon with the Department of Justice (DOJ) within a prescribedperiod.[11] Notably, however, "grandfathered" weapons are still restricted in the manner of their use and disposition: even one who properly registers an assault weapon may only possess it in certain place (such as on the owner's property or on the premises of a target range or licensed shooting club), or for specified purposes (such as attending an exhibition or educational event conducted by a law enforcement agency, or transporting the weapon to a licensed gun dealer for service or repair).[12] In general, a person who wishes to acquire *Page 5 
an assault weapon, or to use an assault weapon in a way not specifically authorized by statute, must first obtain a permit from DOJ.[13] DOJ may issue the permit only upon "a satisfactory showing that good cause exists for the issuance."[14] To establish good cause, an applicant must provide DOJ "with clear and convincing evidence that there is a bona fide market or public necessity for the issuance of a dangerous weapons permit or license and that the applicant can satisfy that need without endangering public safety."[15] One who obtains a permit to acquire an assault weapon must also register the weapon.[16]
Peace Officer Exceptions
The Act provides for several other conditional exceptions to its general prohibitions, [17] but those most pertinent to our analysis relate to law enforcement. Section 12280 sets forth these exceptions, in pertinent part, as follows:
 (e) Subdivisions (a), (b), and (c) shall not apply to the sale to, purchase by, importation of, or possession of assault weapons or a .50 BMG rifle by the Department of Justice, police departments, sheriffs' offices, marshals' offices, the Department of Corrections and Rehabilitation, the Department of the California Highway Patrol, district attorneys' offices, Department of Fish and Game, Department of Parks and Recreation, or the military or naval forces of this state or of the United States, or any federal law enforcement agency for use in the discharge of their official duties. *Page 6 
 (f)(1) Subdivisions (b) and (c) shall not prohibit the possession or use of assault weapons or a .50 BMG rifle by sworn peace officer members of those agencies specified in subdivision (e) for law enforcement purposes, whether on or off duty.
 (f)(2) Subdivisions (a), (b), and (c) shall not prohibit the delivery, transfer, or sale of an assault weapon or a .50 BMG rifle to, or the possession of an assault weapon or a .50 BMG rifle by, a sworn peace officer member of an agency specified in subdivision (e) if the peace officer is authorized by his or her employer to possess or receive the assault weapon or the .50 BMG rifle. Required authorization is defined as verifiable written certification from the head of the agency, identifying the recipient or possessor of the assault weapon as a peace officer and authorizing him or her to receive or possess the specific assault weapon.[18] . . . The peace officer must include with the registration, a copy of the authorization required pursuant to this paragraph.
Subdivisions (f)(1) and (f)(2) differ in some significant aspects. To begin with, subdivision (f)(1) does not create any exception for the purchase of assault weapons by peace officers, but only for their possession or use. Subdivision (f)(1) permits a peace officer to receive and use a weapon that is lawfully owned by a qualified law enforcement agency.[19] On the other hand, subdivision (f)(2) permits the sale of an assault weapon directly to a peace officer who is employed by a qualified law enforcement agency, provided that the officer secures the employer's authorization to do so, and complies with the subdivision's other requirements. Unlike the officer to whom an assault weapon is assigned by a qualified agency under subdivision (f)(1), an officer who buys an assault weapon under subdivision (f)(2) must register the weapon. *Page 7 
Most notably, however, where subdivision (f)(1) permits a peace officer to possess and use an assault weapon "for law enforcement purposes, whether on or off duty," subdivision (f)(2) does not expressly restrict peace officers to using their assault weapons for law enforcement purposes. The legislative history of this provision reveals that the failure to include such a restriction was not the result of inadvertence. Several legislative reports remarked on this feature of the provision during the course of the Legislature's deliberations, [20] and at least one offered suggestions for the addition of limiting language.[21]
Thus, while written employer authorization is a prerequisite for registration, which is necessary for the lawful possession of an assault weapon under subdivision (f)(2), authorization is not necessarily conditioned upon a requirement that the weapon be used exclusively, or at all, for law enforcement purposes. We are informed that sometimes the employer authorization does specify that the assault weapon is being authorized for the officer's use in the course and scope of his or her official duties. (This appears to be the situation contemplated by the requester.) In such a case, use of the weapon for purposes other than law enforcement might subject the officer to discipline by the employer, but the statute itself does not limit the scope of uses permitted once the weapon is registered. The registration application does not require the applicant to specify the uses to which the assault weapon will be put; registration is designed to enable DOJ to verify the identity of the holder of the weapon and to track the weapon. We are informed that a peace officer who registers a weapon pursuant to subdivision (f)(2) ordinarily is not required to obtain a permit also.
While it is necessary to understand how subdivision (f)(2) operates in relation to active duty peace officers, we have been asked here to determine whether the subdivision applies to retired peace officers. To do so, we employ well-established principles of statutory interpretation: *Page 8 
 [O]ur first task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, [we] must look first to the words of the statute themselves, giving to the language its usual, ordinary import. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose. . . . [Citations omitted.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.[22]
First and foremost, we observe at the outset that the peace officer exceptions to the Act contain no express references to retired officers. In our view, therefore, wherever section 12280 refers to a peace officer, it means one who is currently a peace officer. In our view, only a sworn officer member of one of the agencies specified in subdivision (e) may come within the exceptions set forth in subdivision (f), and a retired peace officer no longer has that status. Thus, upon retirement, a necessary condition for the exemption ceases to exist. We further note that the Legislature has provided an express exemption for several different categories of "honorably retired peace officers" from a law prohibiting the carrying of concealedweapons.[23] We believe that this demonstrates that, when the Legislature intends to include retired peace officers within the scope of an exception, it knows how to do so. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed."[24]
The most potent proof that this principle applies in the present case is, of course, that the Act itself formerly contained an express exception for retired peace officers, which was omitted after it was invalidated by Silveira.
However, the current Act's inattention to the eventuality of a peace officer's retirement has also resulted in some gaps, particularly in connection with subdivision (f)(2). We are informed, for example, that DOJ does not revoke the registration of an assault weapon upon the owner-officer's retirement, nor does DOJ require a peace officer to dispose of or relinquish a registered weapon upon retirement. The Act itself does not address the proper disposition of an assault weapon acquired pursuant to *Page 9 
subdivision (f)(2) once a peace officer has retired.
Nonetheless, we believe it would be improper to infer from that silence that the retired officer remains within one of the exceptions. When construing a statute, we are "not authorized . . . to create exceptions not specifically made."[25] More particularly, "[w]hen a statute contains an exception to a general rule laid down therein, that exception is strictly construed," and "[o]ther exceptions are necessarily excluded."[26]
In addition, we must be mindful of the objective the statute seeks to achieve as well as the evil it seeks to prevent.[27] As expressed in section 12275.5, the Act is designed to eliminate the proliferation and use of assault weapons to the furthest extent feasible. Although "some of the operative provisions of the [Act] are unclear, the restrictive purpose of the Act is plain."[28]
Upon retirement from government service, a peace officer becomes a private citizen, to whom the general prohibition on assault weapons becomes applicable. We therefore construe the peace officer exceptions to the general prohibition on possessing assault weapons to exclude retired officers. We find convincing support for our position in the Silveira case, to which we now turn.
Silveira v. Lockyer
In 1999, the Legislature amended the Act to strengthen the Act's restrictions on the possession and use of assault weapons by privateindividuals.[29] This was accomplished primarily by the addition of provisions that define weapons not by model and manufacturer, but in terms of their characteristics, [30] and which thereby greatly *Page 10 
expanded the list of prohibited weapons. Existing owners of assault weapons now had to comply with the Act's registration requirements and use restrictions, and persons who did not already own them could no longer acquire them.
At the same time, the 1999 amendments enlarged the exceptions for peace officers. Before the adoption of the amendments, the Act allowed peace officers to possess or use assault weapons when the officers were "on duty" and the use was "within the scope of their duties." Under the amendments, peace officers were allowed to possess or use assault weapons "for law enforcement purposes, whether on or off duty."[31] The amendments also added new provisions pertaining to retired peace officers, permitting a qualified law enforcement agency to sell or transfer an assault weapon to a person who retired as a sworn officer from that agency, [32] and providing that the Act's general prohibition on the possession of assault weapons "shall not apply to the possession of an assault weapon by a retired peace officer who received that assault weapon[upon retirement]."[33]
Subsequently, the Act was challenged by parties who did not wish to register their assault weapons or who were barred from purchasing assault weapons, arguing that the new restrictions violated their rights under the Second Amendment of the United States Constitution.[34] In addition, parties who were not active or retired California peace officers challenged the provisions of the Act permitting active duty peace officers to possess assault weapons while off duty, and retired peace officers to possess assault weapons they acquired from their agencies at the time of their retirement. These plaintiffs alleged that the exceptions for retired officers violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[35]
After extensive analysis, and following Ninth Circuit precedent, the Silveira court applied what it termed the "collective rights" model of the Second Amendment to *Page 11 
plaintiffs' claims. According to this model, theSecond Amendment guarantees the right of the people to maintain effective state militias, but does not provide any type of individual right to own or possess weapons. Under this theory of the amendment, the federal and state governments have the full authority to enact prohibitions and restrictions on the use and possession of firearms, subject only to generally applicable constitutional constraints, such as due process, equal protection, and the like.[36]
The court found that "the Second Amendment imposes no limitation on California's ability to enact legislation regulating or prohibiting the possession or use of firearms, including dangerous weapons such as assault weapons," and consequently held that the plaintiffs lacked standing to challenge the Act onSecond Amendment grounds.[37]
The court determined, however, that the non-peace officer plaintiffs did have standing to challenge the Act's provisions regarding off-duty and retired peace officers on equal protection grounds, because the Act afforded those peace officers benefits that were not available to the plaintiffs.[38] Because the court concluded that the plaintiffs were not members of a protected class, and had no fundamental right under the Second Amendment to own or possess firearms, it concluded that the plaintiffs' equal protections claims should be reviewed under a rational-basis test.[39] Applying that standard, the court reasoned that it is "manifestly rational" for most categories of peace officers "to possess and use firearms more potent than those available to the rest of the populace in order to maintain public safety."[40]
Noting that the exception for off-duty peace officers permitted possession and use of an assault weapon only for law enforcement purposes, the court stated:
 We presume that off-duty officers may find themselves compelled to perform law enforcement functions in various circumstances, and that in addition it may be necessary that they have their weapons readily available. Thus, the provision is designed to further the very objective of preserving the public safety that underlies the [Act]. Consequently, there is a rational *Page 12 
basis for the provision, and it comports with the requirements of the Fourteenth Amendment.[41]
By contrast, the court concluded that the exception forretired peace officers, which was not limited by its terms to purposes of law enforcement, to have no such rationalbasis.[42] The court reasoned that any exception to the Act unrelated to effective law enforcement would not serve the Act's purpose of "eliminating the availability of high-powered, military-style weapons and thereby protecting the people of California from the scourge of gun violence."[43] The State had argued that retired peace officers could be differentiated from members of the public because the officers had received more extensive training in the use of firearms, and therefore it was reasonable to allow retired officers to possess assault weapons for non-law enforcement purposes. The court rejected this justification, stating that, "The object of the statute is not to ensure that assault weapons are owned by those most skilled in their use; rather, it is to eliminate the availability of the weapons generally."[44] The court also remarked upon the unrestricted nature of the retired officer exception: in contrast to an off-duty officer, whose use of an assault weapon was still limited to law enforcement, a retiree could "possess and use assault weapons for any purpose whatsoever."[45] Because retired peace officers no longer serve in any law enforcement capacity, the court discerned "no legitimate state interest in permitting retired peace officers to possess and use for their personal pleasure military-style weapons."[46] The court accordingly held that the retired officer exception was an arbitrary classification in violation of the Fourteenth Amendment, and thereforeunconstitutional.[47]
In response to the Silveira decision, the Legislature amended section 12280 to delete the exception for retired peace officers. The amending legislation declares:
 It is the intent of the Legislature in amending Section 12280 of the Penal Code to delete the exemption allowing retired peace officers to obtain an assault weapon from their employing agency upon retirement. These *Page 13 
amendments are intended to make Section 12280
of the Penal Code consistent with the holding in Silveira v. Lockyer (2003) 312. F.3d 1052 by the Ninth Circuit Court of Appeals, which held that exemption to be unconstitutional. The amendments deleting the exemption are therefore declaratory of existing law.[48]
Since the retired officer exception has been removed from the statute, it is evident that a peace officer to whom an employer-owned assault weapon is assigned pursuant to subdivision (f)(1) must return the weapon to the employing agency upon retirement. This conclusion comports with the language of the statute, and is compelled by Silveira.
What, then, of the peace officer who acquires his or her own assault weapon under the authority of subdivision (f)(2), and then retires? Subdivision (f)(2) was added to the Act in 2001 and became effective on January 1, 2002. It was in the Act beforeSilveira was decided, but it was not among the provisions addressed by Silveira.[49] As we have seen, the stated intent of the Legislature in adding this provision was to allow peace officers the option of "purchasing assault weapons for use at work,"[50] and the weapons may, we believe, be used for law enforcement purposes. We need not speculate on whether this provision meets the standard for an active duty peace officer exception established in Silveira; our focus is on whether the situation of a retired peace officer who acquires an assault weapon under subdivision (f)(2) is materially different from that of the retired peace officer in the exception invalidated bySilveira. We think that it is not.
Silveira teaches that it is the a peace officer's role asa law enforcement agent that provides a rational basis for distinguishing between a peace officer and a private citizen for purposes of possessing and using assault weapons. A retired officer is not authorized to engage in law enforcement activities. Therefore we believe that the rule of Silveira *Page 14 
must apply here as well.
It is true that, unlike the exception struck down inSilveira, subdivision (f)(2) does require registration of the assault weapon. Thus, unlike the retiree in Silveira, an officer who has acquired an assault weapon under subdivision (f)(2) may not use the weapon "for unlimited purposes, and in an unregulated manner."[51] Rather, this officer, upon retirement, is restricted to the uses for a registered weapon permitted by section 12285. In effect, then, allowing the post-retirement possession of an assault weapon acquired under subdivision (f)(2) places the retired officer in the same position as a person who was permitted to keep assault weapons under the "grandfather" provisions of the Act, even though the officer did not meet the grandfathering requirements.[52] Keeping theSilveira Court's reasoning in mind, however, we believe that this kind of extension undermines the objective of the Act to stop "the proliferation and use of assault weapons."[53] Hence, we conclude that the requirement of subdivision (f)(2) that an assault weapon be registered is not sufficient to justify the continued possession of the weapon after the qualifying officer has retired. Our conclusion is supported by the Silveira opinion, which states that the retired officer exception in the 1999 amendments would be invalid even if the peace officers who obtained assault weapons for personal use upon retirement were not exempt from the registration and use restrictions of the Act.[54]
Furthermore, we do not believe that the fact that a peace officer may have spent his or her own money to buy an assault weapon under subdivision (f)(2), makes this situation materially different from the issue decided in Silveira. The Silveira
case stands squarely for the proposition that the continued possession of assault weapons by retired peace officers does not serve law enforcement purposes and is therefore inconsistent with the legislative purpose of the Act, which is to eliminate the availability of assault weapons generally.[55] The source of funds for the purchase of a weapon is not relevant to the issue of whether its possession may be justified on law enforcement grounds. *Page 15 
Post-Silveira
We take note of two significant cases regarding the right to possess weapons that have been decided by the Supreme Court of the United States since the Silveira decision. In Districtof Columbia v. Heller, the Supreme Court held that theSecond Amendment protects an individual's right to possess and carry weapons in case of confrontation. In so doing, it struck down District of Columbia laws that banned possession of handguns in the home and prohibited making any lawful firearm in the home operable for the purpose of immediate self-defense.[56] The Court also rejected the use of rational-basis scrutiny for the analysis of the regulation ofSecond Amendment rights.[57] Heller left unresolved the issue of whether the Second Amendment applied to thestates.[58] However, in McDonald v. City of Chicago, a majority of the United States Supreme Court held that theFourteenth Amendment makes the Second Amendment right announced inHeller fully applicable to the States.[59] The Justices in the majority characterized the individual right to keep and bear arms, particularly for self-defense, as "fundamental" to the American "scheme of ordered liberty."[60]
Thus, one of the central tenets of Silveira, that theSecond Amendment does not afford an individual right to possess and carry firearms generally, can no longer besustained.[61] Nevertheless, the other holdings ofSilveira remain valid. Heller declared that the right to keep and bear arms is not unlimited, and indicated that the states could still regulate the carrying of dangerous and unusualweapons.[62] The California Court of *Page 16 
Appeal has accordingly held that "possession of an assault weapon in California remains unlawful and is not protected by theSecond Amendment to the federal Constitution as construed by the United States Supreme Court" in Heller.[63]
The court of appeal noted that, in enacting the Act, the Legislature was concerned with the unusual and highly dangerous nature of such weapons, as is memorialized in the Legislature's statement of intent in section 12275.5. As the court stated, "These are not the types of weapons that are typically possessed by law-abiding citizens for lawful purposes such as sport hunting or self-defense; rather, these are weapons of war."[64] Because the possession of assault weapons is not a protectedSecond Amendment right in California, it appears that the appropriate level of scrutiny regarding the regulation of such weapons is not governed by Heller.
In sum, construing the law enforcement exceptions of the Act to include retired peace officers would contravene both the express language and underlying policy of the Act, and would do nothing to further law enforcement purposes. Accordingly, we conclude that a peace officer who purchases and registers an assault weapon is not permitted to continue to possess the assault weapon after retirement.
[1] Pen. Code §§ 12275-12290. These sections constitute a chapter entitled Roberti-Roos Assault Weapons Control Act of 1989 and .50 Caliber BMG Regulation Act of 2004. Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] Silveira v. Lockyer, 312 F.3d 1052, 1091 (9th Cir. 2002) (as am. Jan. 27, 2003).
[3] Id. at 1091.
[4] Id. at 1091-1092.
[5] 2003 Cal. Stat. ch. 499, § 6.5 (Sen. Bill 238).
[6] § 12275.5(a). See generally Kasler v. Lockyer,23 Cal. 4th 472, 482-485 (2000) (recounting events leading to adoption of Act).
[7] In a semiautomatic weapon, only one bullet is fired when the user depresses the trigger, but another bullet is automatically reloaded into the gun's chamber. "Thus, by squeezing the trigger repeatedly and rapidly, the user can release many rounds of ammunition in a brief period of time. . . . Moreover, the semi-automatic weapons known as assault weapons contain large-capacity magazines, which require the user of the weapon to cease firing to reload relatively infrequently because the magazines contain so much ammunition. Consequently, users of such weapons can `spray-fire' multiple rounds of ammunition, with potentially devastating effects." Silveira,312 F.3d at 1058 n. 1 (citation omitted).
[8] § 12276.1(b), (c).
[9] As used in the Act, a ".50 BMG rifle" means a center fire rifle that can fire a .50 BMG cartridge and is not already defined as an assault weapon. § 12278. The Act treats .50 BMG rifles separately from those weapons it designates assault weapons, but many of the Act's provisions governing .50 BMG rifles parallel provisions governing assault weapons.E.g., § 12280(c). While this opinion focuses on assault weapons, its analysis and conclusion apply equally to .50 BMG rifles.
[10] § 12280(a)(1). Unauthorized possession of an assault weapon or .50 BMG rifle is generally punishable by imprisonment. § 12280(b), (c). In lieu of bringing a criminal prosecution, the Attorney General, any district attorney, or any city attorney may bring a civil action or reach a civil compromise to enjoin the possession of the assault weapon or .50 BMG rifle as a public nuisance. § 12282.
[11] §§ 12280(g), 12285(a)(1). A person who lawfully possessed an assault weapon, as defined in section 12276, prior to June 1, 1989, must have registered the firearm by January 1, 1991. A person who lawfully possessed an assault weapon prior to the date it was specified as an assault weapon pursuant to section 12276.5 must have registered the firearm within 90 days of that determination. Except as provided in subdivision (a) of section 12280, any person who lawfully possessed an assault weapon prior to the date it was defined as an assault weapon pursuant to section 12276.1, and which was not specified as an assault weapon under section 12276 or 12276.5, must register the firearm within one year of the effective date of section 12276.1. As of the date of this opinion, these statutory grace periods have expired, and thus registration is not currently available absent an applicable exception, but amendment of section 12276.1 would trigger a new grace period for weapons designated assault weapons under that section.
[12] § 12285(c).
[13] § 12286.
[14] § 12230.
[15] Cal. Code Regs. tit. 11, § 4128(c). For example, good causes recognized by DOJ for the possession and use of dangerous weapons include use for training, research, and development pursuant to government contract and use as props in commercial entertainment events. Id.
[16] Jackson v. Dept. of Just.,85 Cal. App. 4th 1334, 1346-1348 (2001) (permit does not obviate need for registration even though Act does not explicitly state that permittees are subject to registration requirements; permit attaches to person, whereas registration attaches to weapon).
[17] See e.g. § 12280 subds. (i), (j) (executor or administrator of an estate that includes an assault weapon that was registered or legally possessed), subds. (k), (l) (lending of a registered assault weapon to another person); subd. (m) (importation of assault weapon into the state by nonresident).
[18] Section 12280, subdivision (f)(2) further provides that for the exemption to apply, a peace officer who possessed or received the assault weapon prior to January 1, 2002 must have registered the assault weapon pursuant to section 12285 on or before April 1, 2002, and a peace officer who possesses or receives the assault weapon on or after January 1, 2002 must register the assault weapon pursuant to section 12285 not later than 90 days after possession or receipt.
[19] We are informed that the agencies specified in section 12280(e), which may purchase and own assault weapons, are not required to register the weapons, but are encouraged to enter information identifying the weapons into the DOJ assault weapons database.
[20] See, e.g., Assembly Comm. on Pub. Safety, Analysis of Sen. Bill No. 626, 2001-2002 Reg. Sess. 4 (July 10, 2001) ("The author indicates that some law enforcement agencies cannot afford to purchase assault weapons, but would authorize their officers to purchase these weapons if the law allowed. . . . Presumably, these weapons would be purchased for use on duty, but there is nothing in this bill which would limit the possession to duty use, and although departmental authorization is required, there is no restriction that the assault weapon be necessary for law enforcement purposes.").
[21] Sen. Comm. on Pub. Safety, Analysis of Sen. Bill 626, 2001-2002 Reg. Sess. 6 (Apr. 17, 2001) (proposing that exemption could be limited to assault weapons that would be authorized as duty weapons).
[22] Dyna-Med, Inc. v. Fair Empl. Hous. Commn.,43 Cal. 3d 1379, 1386-1387 (1987); see also
Code Civ. Proc. § 1859.
[23] § 12027(a)(1)(A).
[24] People v. Licas,41 Cal. 4th 362, 367 (2007) (citation omitted); see alsoGebremicael v. Cal. Commn. on Teacher Credentialing,118 Cal. App. 4th 1477, 1486-1487 (2004) (where one statute contained express exception to a Penal Code provision, failure to include express exception in second statute signified Legislature's intent that second statute did not contain the exception).
[25] Stockton Theatres, Inc. v. Palermo,47 Cal. 2d. 469, 476 (1956).
[26] Goins v. Bd. of Pension Commrs.,96 Cal. App. 3d 1005, 1009 (1979) (citations omitted); see alsoMut. Life Ins. Co. v. City of Los Angeles,50 Cal. 3d 402, 410 (1990) (where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed) (citations omitted); Bd. of Med. Quality Assurance v.Andrews, 211 Cal. App. 3d 1346, 1355 (1989) ("Statutes conferring exemptions from regulatory schemes are narrowly construed.").
[27] Jackson,85 Cal. App. 4th at 1348 (citation omitted).
[28] Id. at 1347.
[29] Stats. 1999 ch. 129 (Sen. Bill No. 23). Section 12 of the legislation provides: "It was the original intent of the Legislature in enacting Chapter 19 of the Statutes of 1989 to ban all assault weapons, regardless of their name, model number, or manufacture. It is the purpose of this act to effectively achieve the Legislature's intent to prohibit all assault weapons."
[30] See § 12276.1.
[31] Former § 12280(g) (as am. 1999). This provision is substantially the same as the exception now contained in § 12280(f)(1).
[32] Former § 12280(h) (as am. 1999).
[33] Former § 12280(i) (as am. 1999).
[34] The Second Amendment of the U.S. Constitution states in its entirety: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."
[35] The Equal Protection Clause is contained in section 1 of theFourteenth Amendment of the U.S. Constitution, and provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."
[36] Silveira, 312 F.3d at 1059. The "collective rights" theory of the Second Amendment was rejected in cases decided by the United States Supreme Court in 2009 and 2010. Those decisions and their impact on the holdings of Silveira are discussed further, below.
[37] Silveira, 312 F.3d at 1087.
[38] Id.
[39] Id. at 1087-1088.
[40] Id. at 1089.
[41] Id.
[42] Id. at 1089-1090.
[43] Id. at 1090.
[44] Id. at 1091.
[45] Id.
[46] Id.
[47] Id. at 1091-1092.
[48] 2003 Stats. ch. 499, § 6.5 (Sen. Bill 238).
[49] 2001 Stats. ch. 937, § 2 (Sen. Bill 626). At that time the provision was numbered 12280(g)(2). The Act contained both that provision and the express retired peace officer exception from January 1, 2002 through December 31, 2003, after which the retired peace officer exception was omitted. The language of the express retired peace officer exception (then 12280(h) and (i)) remained identical before and after the introduction of section 12280 (g)(2) (now 12280(f)(2)) and remained limited in application to instances of peace officers receiving an assault weapon from their employers upon retirement, indicating that the express exception never applied to peace officers who acquired their own assault weapons.
[50] Sen. Rules Comm., Third Reading of Sen. Bill No. 626, 2001-2002 Reg. Sess. 6 (May 14, 2001).
[51] Silveira, 312 F.3d at 1091.
[52] Of course, if a peace officer who lawfully owned an assault weapon prior to the enactment of the Act or prior to the date the weapon was designated an assault weapon, and timely registered the weapon as prescribed by the Act, the officer would meet the grandfathering requirements, and, upon retirement, would be permitted to continue to possess the weapon on the same terms as any other private citizen who met the grandfathering requirements.See supra 5-6 and n. 11-12.
[53] § 12275.5(a).
[54] Silveira, 312 F.3d at 1090 n. 55.
[55] See id. at 1091.
[56] Dist. of Columbia v. Heller,554 U.S. 570, 128 S. Ct. 2783, 2792, 2821-2822 (June 26, 2008).
[57] Id. at 570 n. 27, 128 S. Ct. at 2818 n. 27. The opinion does not specify what level of review is to be applied.
[58] See id. at 570 n. 23, 128 S. Ct. at 2813 n. 23. The Bill of Rights, including the Second Amendment, originally applied only to the Federal Government. The question of whether theSecond Amendment applies to the states was not before the court inHeller because the District of Columbia is a federal district.
[59] McDonald v. City of Chicago, 561 U.S. ___,130 S. Ct. 3020, 3050, 3059 (June 28, 2010).
[60] See McDonald, 561 U.S. at ___,130 S. Ct. at 3036-3044, 3059.
[61] See U.S. v. Vongxay,594 F. 3d 1111, 1116 (9th Cir. 2010) (recognizing that reasoning ofSilveira with respect to Second Amendment had been invalidated by Heller), pet. for cert. filed July 13, 2010) (NO. 10-5423).
[62] Heller,554 U.S. at 570, 128 S. Ct. at 2817-2818 (providing a non-exhaustive list of presumptively lawful examples of valid government regulation, and also explaining that Second Amendment protection is limited to weapons in common use and does not extend to dangerous and unusual weapons). See McDonald, 561 U.S. at ___,130 S. Ct. 3020 at 3047 (historically, right to keep and bear arms "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.") (quotingHeller, 554 U.S. 570, 128 S. Ct. at 2816).
[63] People v. James,174 Cal. App. 4th 662, 664 (2009) (rev.denied Sept. 17, 2009, cert. denied130 S. Ct. 1517 (U.S. Cal. Feb 22, 2010) (NO. 09-7933)). TheJames court's holding also extends to .50 caliber BMG rifles.James, 174 Cal. App. 4th at 676.
[64] Id. *Page 1